Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletree.com
Jesse C. Ferrantella CA Bar No. 279131
jesse.ferrantella@ogletree.com
Cameron O. Flynn CA Bar No. 301830
cameron.flynn@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4660 La Jolla Village Drive, Suite 900
San Diego, CA  92122
Telephone:  858-652-3100
Facsimile:   858-652-3101

Attorneys for Defendant CORE CONTRACTING, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN TORRES, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>CORE CONTRACTING, INC., A CALIFORNIA CORPORATION; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendant. | Case No. **'24CV0891 LL   BLM**<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>Complaint Filed: April 15, 2024<br>Trial Date:        Not Set |

Defendant CORE CONTRACTING, INC. ("CCI") removes this action, originally commenced in the Superior Court of the State of California for the County of San Diego, Case No. 37-2024-00017668-CU-OE-CTL, to the United States District Court for the Southern District of California. Removal is proper because this Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, as this action arises under federal law. Specifically, Plaintiff's claims are substantially dependent upon the interpretation of collective bargaining agreements governing the terms and conditions of employment. The claims are, therefore, preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 et seq., and this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) and (c). In support of this removal, CCI states the following pursuant to 28 U.S.C. § 1446(a):

## I.   BACKGROUND AND SUMMARY OF PLEADINGS

1.   CCI is a premier union signatory wood framing contractor that specializes in building and renovating school campuses, hospitality projects, panelized roof structures, fire stations, community buildings, and retail shopping centers. Declaration of James Moore ("Moore Decl."), ¶ 3. Plaintiff Juan Torres ("Plaintiff") was employed by CCI from January 2019 to December 2022 as a journeyman carpenter. Moore Decl., ¶ 10; *see* Declaration of Jesse C. Ferrantella ("Ferrantella Decl."), ¶ 2, Exhibit A – Plaintiff's Operative Complaint (the "Complaint"), ¶ 7. During the applicable limitations period, i.e. from April 15, 2020, to the present (Complaint, ¶ 22) (the alleged "Class Period"), there are approximately 477 putative class members in California who worked for CCI ("Putative Class Group"). *Id*; Moore Decl., ¶ 4.

2.   CCI, either directly or as part of an association of contractors, entered into collective bargaining agreements (collectively, "CBAs") with various unions ("Unions") applicable to the Putative Class Group. Moore Decl., ¶¶ 5-6, Exs. 1-4. All of the CBAs expressly provide for the wages, hours of work, and working conditions of the covered employees. Additionally, the CBAs and the applicable wage sheets all

1  provide premium wage rates for all overtime hours worked and union employees
2  working for CCI in California received an hourly rate of pay including all base wages
3  and supplements of not less than 30 percent more than the state minimum wage during
4  the Class Period. The CBAs also all provide for meal periods for covered employees,
5  and for a grievance procedure, including binding arbitration for any and all disputes.
6  Moore Decl., ¶¶ 4-9, Exs. 1-5.

7  3.  On April 15, 2024, Plaintiff commenced this action in the Superior Court
8  of California, County of San Diego, Case No. 37-2024-17668-CU-OE-CTL. Plaintiff
9  served CCI with his Complaint on April 18, 2024. *See* Ferrantella Decl., ¶ 2, Exhibit
10 A (containing true and correct copies of the Summons, Complaint, Civil Case Cover
11 Sheet, and Civil Lawsuit); *id.*, ¶ 3, Exhibit B (Proof of Service).

12 4.  CCI filed its Answer to Plaintiff's Complaint in the San Diego County
13 Superior Court on May 17, 2024. Ferrantella Decl., ¶ 4; Ex. C, Answer. CCI's Answer
14 to the Complaint is attached hereto as Exhibit C. Ferrantella Decl. ¶ 4, Exhibit C.

15 5.  Plaintiff's Complaint seeks damages and penalties on behalf of himself
16 and "[a]ll persons who worked for any Defendant in California as a non-exempt
17 employee at any time during the period beginning four years before the filing of the
18 initial complaint in this action and ending when notice to the Class is sent." Complaint,
19 ¶ 22. As detailed below, Plaintiff's Complaint implicates federal law because the terms
20 and conditions of Plaintiff's and the Putative Class Group's employment are subject
21 to at least one of the CBAs outlined above. Moore Decl., ¶¶ 4-6, Exs. 1-4.

22 6.  A copy of this Notice of Removal will be served on Plaintiff and filed
23 with the Superior Court of California for the County of San Diego. Exhibits A-C
24 contain all process, pleadings, and orders served on CCI in accordance with 28 U.S.C.
25 § 1446(a), and no other proceedings have been held in this action. Ferrantella Decl. ¶¶
26 5-6.

27
28

## II. REMOVAL IS PROPER UNDER FEDERAL QUESTION JURISDICTION UNDER THE LABOR MANAGEMENT RELATIONS ACT

7. This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a), because it is a civil action that presents a federal question.

8. Plaintiff's claims are either based upon or preempted by federal law, specifically Section 301 of the LMRA ("Section 301"), 29 U.S.C. § 185. Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).

9. Section 301 preempts state law claims requiring interpretation of a CBA. "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 23 (1983).) Section 301 also preempts "any state [law] claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988). "[T]he key to determining the scope of Section 301 preemption is not based on how the complaint is framed," it is based on whether resolution of the claims requires "referring to the terms of the…[CBA]." *Id*. The reason is that "the interpretation of [CBAs] is exclusively a matter for arbitration under federal law." *Levy v. Skywalker Sound*, 108 Cal.App.4th 753, 762 (2003). "Once preempted, 'any claim purportedly based on [a] state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

10. A plaintiff cannot avoid Section 301 preemption by "artfully pleading" a claim to allege state law violations. *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988). For example, where "[r]esolution of plaintiffs' claim to overtime pay ... cannot be decided by mere reference to unambiguous terms of the agreement," it is preempted. *Id*. Similarly, where a collective bargaining agreement satisfies the requirements of Labor Code Section 514, and the right to overtime exists solely as a result of the CBA, and the claim is preempted under Section 301 of the LMRA. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1154-55 (9th Cir. 2019). Courts also find meal and rest period claims to be preempted where the applicability of the Labor Code provisions require analysis and interpretation of a CBA. *See e.g., Coria v. Recology, Inc.*, 63 F.Supp.3d 1093, 1097 (N.D. Cal. 2014); *Ayala v. Destination Shuttle Servs. LLC*, No. cv-13-6141 GAF (PJWx), 2013 WL 12092284, at *4 (C.D. Cal. Nov. 1, 2013). Similarly, where a collective bargaining agreement satisfies the requirements of Labor Code Section 512(e), and the right meal periods exists solely as a result of the CBA, and the claim is preempted under Section 301 of the LMRA. *Araquistain v. Pac. Gas & Elec. Co.*, 229 Cal.App.4th 227, 236, 238 (2014); *Coria*, 63 F.Supp.3d at 1097.

11. Section 301 of the LMRA provides a basis for federal jurisdiction, and authorizes federal courts to develop a federal common law of the interpretation of collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988). To ensure uniform interpretations of collective bargaining agreements, federal common law preempts the use of state law in collective bargaining agreement interpretation and enforcement. *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962); *Lingle*, 486 U.S. at 411.

12. Further, all state law claims that require interpretation of a collective bargaining agreement must be brought pursuant to Section 301 of the LMRA. *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985); *Newberry v. Pac. Racing Ass'n*,

854 F.2d 1142, 1146 (9th Cir. 1988) (concluding "[t]he preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . [and] any state claim whose outcome depends on analysis of the terms of the agreement."); *see also Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction").

13.     Section 301 preempts California state law claims that are substantially dependent upon interpretation of a CBA. *Firestone*, 219 F.3d at 1066-67 (claim preempted by Section 301 where the CBA had to be interpreted to resolve the plaintiff's wage claims). This remains true even where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause of action. *See Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the level set by the CBA"). Thus, any suit "alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Curtis*, 913 F.3d at 1152 ("A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law.").

14.     Adjudicating Plaintiff's Complaint will require interpretation of the CBAs. First, Plaintiff's claims are premised upon, and therefore derivative of, the various underlying violations of the California Labor Code identified in Plaintiff's Complaint. *See* Complaint, *generally* (basing claims on Labor Code violations). As detailed below, many (if not all) of the underlying labor code violations alleged in Plaintiff's Complaint are preempted due to the CBAs. Thus, Section 301 of the LMRA preempts the underlying Labor Code violations. *See*, *e.g.*, *Lingle*, 486 U.S. at 405-06 ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted").

### A. The Putative Class Group Is Governed by a CBA

15. As noted above, CCI is bound by CBAs that apply to the Putative Class Group members during the Class Period. Moore Decl., ¶¶ 5-6, Exs. 1-4. All of the CBAs expressly provide for the wages, hours of work, and working conditions of the covered employees. Additionally, they all provide premium wage rates for all overtime hours worked and union employees working for CCI in California received an hourly rate of pay including all base wages and supplements of not less than 30 percent more than the state minimum wage during the Class Period. The CBAs also all provide for meal periods, and for a grievance procedure for disputes, including binding arbitration for all disputes. Moore Decl., ¶¶ 5-10; Exhibits 1-5.

16. At all relevant times alleged in the Complaint, CCI has been a company engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and 185(a). Moore Decl., ¶ 2.

17. The CBAs were negotiated with the Unions for which members of the Putative Class Group are members and which exist for the purpose of addressing employee grievances, labor disputes, wages, rates of pay, hours of employment, conditions of work, discipline, and discharge. Moore Decl., ¶¶ 5-9; Exhibits 1-5. At all relevant times, these unions have been, and are, a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

18. Each of the CBAs specifically recognize the union or labor organization as the exclusive representative for each of their respective covered employees for the purposes of collective bargaining to establish rates of pay, hours of work, and other conditions of employment. Further, they provide the parties agree the CBA shall cover all working conditions, wages, and hours of employment affecting the covered employees. Moore Decl., ¶¶ 5-9; Exhibits 1-5.

## B. The Claims are Preempted by the LMRA

### 1. Plaintiff's Failure to Reference Section 301 of the LMRA in the Complaint Does Not Preclude Removal

19. The Complaint omits the fact that Plaintiff and the Putative Class Group's employment claims are subject to one of the CBAs. However, a plaintiff may not be permitted to "artfully plead" his complaint to conceal the true nature of the complaint. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993,997 (9th Cir. 1987). Thus, the Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), *overruled in part on other grounds in Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009).

20. An artfully pled state law claim is properly "re-characterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 of the LMRA "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").

21. To determine whether a claim alleging violations of state law is preempted by Section 301(a) of the LMRA, the Ninth Circuit employs a two-step test. *Curtis*, 913 F.3d at 1152. First, the Court asks "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA." *Id*. (quoting *Kobold v.*

1  *Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)). Under this test, a claim is preempted if it seeks "purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018). If so, "the claim is preempted, and [the] analysis ends there." *Burnside*, 491 F.3d at 1059. If not, the courts consider whether a plaintiff's state law right is substantially dependent on analysis of the CBA. *Curtis*, 913 F.3d at 1153. If claims are dependent on interpretation of the CBA, then the claim is also preempted by Section 301. *Franco v. E-3 Sys,* No. 19-cv-01452-HSG, 2019 WL 6358947, at *2 (N.D. Cal. Nov. 8, 2019) (citing *Burnside*, 491 F.3d at 159-60).

### (a) Plaintiff's Claims are Preempted by the LMRA

22. Plaintiff's allegations that CCI violated the California Labor Code involve various rights that "exist solely as a result of the CBA" and/or are "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chambers*, 471 U.S. at 213. Specifically, Plaintiff's Complaint seeks damages and penalties based on the following alleged violations: 1. Failure to Pay Minimum Wages [Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197]; 2. Failure to Pay Overtime Compensation [Cal. Lab. Code §§ 1194 and 1198]; 3. Failure to Provide Meal Periods [Cal. Lab. Code §§ 226.7, 512]; 4. Failure to Authorize and Permit Rest Breaks [Cal. Lab. Code §§ 226.7]; 5. Failure to Indemnify Necessary Business Expenses [Cal. Lab. Code § 2802]; 6. Failure to Timely Pay Final Wages at Termination [Cal. Lab. Code §§ 201-203]; 7. Failure to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226]; and 8. Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200, et seq.].

23. **Plaintiff's Overtime and Unpaid Wage Claims:** Plaintiff's Complaint seeks damages, in part, for CCI's alleged failure to pay overtime. Specifically, Plaintiff alleges that CCI "Defendants failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198. Plaintiff and the Class are regularly required to work overtime hours." Complaint, ¶ 43; see also *id.*,

1  ¶¶ 13-14, 39-47. In other words, the focus of Plaintiff's overtime claims is that he and other Putative Class Group members were not properly compensated for all overtime worked.

24. An overtime claim is preempted where "[r]esolution of plaintiffs' claim to overtime pay [or other wages] … cannot be decided by mere reference to unambiguous terms of the agreement." *Firestone*, 281 F.3d at 802. Further, Labor Code § 514 states that § 510 (the Labor Code's overtime provisions) "do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." "Therefore, if the CBA that applies to an employee is a 'qualifying CBA' carved out from Section 510 by Section 514, then the right to overtime pay exists solely as a result of the CBA and therefore is preempted under § 301." *Loaiza v. Kinkisharyo Intern., LLC*, No. CV1907662JAKKSX, 2020 WL 5913282, at *3 (C.D. Cal. Oct. 6, 2020); *Franco*, 2019 WL 6358947, at *4.

25. Assuming, *arguendo*, that Plaintiff's underlying claims are valid, the CBAs expressly satisfy the requirements of Section 514, because they provide for the wages, hours of work, working conditions, premium wage rates for overtime, and Plaintiff received hourly pay rate that is greater than 30 percent more than the California minimum wage. Moore Decl., ¶ 5, Ex. 1, Art. IX (Section 902), XVI, XVIII; *see also id.*, ¶¶ 5-7; Exs. 2-5, ¶ 10*; see also Sachs v. Pankow Operating, Inc.*, 2:21-cv-08998-AB (ADSx), 2022 WL 489696 at *6 (C.D. Cal. Feb. 16, 2022) (§ 514 requirements met when the "vast majority" of the employee categories in the CBA are assigned hourly rates of pay that exceed this requirement). As a result, these overtime wage claims are preempted under the LMRA analysis, and the Court will have to engage in this analysis to resolve the claims.

26. Additionally, the Court will need to interpret the CBAs to resolve any overtime claim. The Court will have to interpret the CBAs for a variety of information, including (1) assessing the wage scale of the respective CBA the appropriate rate of pay for numerous groups of employees in the separate CBAs; (2) determining the applicable rates of pay and premium rates, given that the CBAs provide for items like different premium rates depending on the day or hours worked as defined; and (3) determining which time is compensable based on the timekeeping/overtime rules in the CBAs. Moore Decl., ¶ 5, Ex. 1, Art. XVI (Section 1602; providing detailed provisions for payment of overtime), XVIII; *see also id.*, ¶¶ 5-7; Exs. 2-5. Thus, if an employee has hours that he or she claims have not been compensated, whether such time is compensable, the rate at which they need to be paid for that time, and the hours that are compensated for purposes of overtime, will require interpretation of the CBA.

27. Plaintiff's Complaint also includes unpaid minimum wage claims that Plaintiff and other putative class members did not receive at least minimum wages for all hours worked. Complaint, ¶¶ 13-14, 29-38. Since Plaintiff's claim for unpaid minimum wages is based on the same or similar conduct as the overtime claim, this cause of action is also subject to the LMRA preemption arguments set forth above, and will require interpretation of the CBAs. *Loaiza*, 2020 WL 5913282, at *21 (To the extent a cause of action relies on an overtime violation, it is derivatively preempted to the same extent as a cause of action for failure to pay overtime). Furthermore, the CBAs set forth the parties' mutual agreement regarding all issues pertaining to employee wages, including hours worked. Moore Decl., ¶¶ 5-7; Exhibits 1-5. For this additional reason, the allegedly-aggrieved employees' rights to wages, compensation, and overtime substantially depend on an analysis of the CBAs.

28. **Plaintiff's Meal Period Claims:** Plaintiff's complaint includes claims for CCI's alleged failure to provide compliant meal periods. Complaint, ¶¶ 15, 48-51 Once again, these claims seek to vindicate rights that require analysis and interpretation of the CBA.

29. California's meal period requirements do not apply to an employee covered by a valid collective bargaining agreement that satisfies the requirements of Labor Code § 512(e). Specifically, the meal period provisions do not apply to an employee specified in subdivision (f) if: (1) The employee is covered by a valid collective bargaining agreement; and (2) it expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate. Lab. Code § 512(e). Where § 512(e) applies, courts find the meal period claims preempted under Step 1 of the above LMRA preemption analysis. *Araquistain,* 229 Cal.App.4th at 236, 238; *Coria,* 63 F.Supp.3d at 1097; *Mireles v. Paragon Syst. Inc.*, No. 13-cv-122 L (BGS), 2014 WL 4385453, at *5-6 (S.D. Cal. Sept. 4, 2014). Furthermore, where an analysis of the plaintiff's meal or rest period claims are substantially dependent on interpretation of the CBAs, the claims are also preempted on this basis. *Chatman v. Wedriveu, Inc.*, No. 3:22-cv-04849-WHO, 2022 WL 15654244 (N.D. Cal. Oct. 28, 2022); *Raphael v. Tesoro Refining and Marketing Co., LLC*, No. 2:15-cv-02862-ODW (Ex), 2015 WL 3970293, at *6-7 (C.D. Cal. June 30, 2015); *Buck v. Cemex*, No. 1:13-cv-00701-LJO-MJS, 2013 WL 4648579, at *6 (E.D. Cal. Aug. 29, 2013).

30. Assuming, *arguendo*, that Plaintiff's underlying meal claims are valid, the CBAs expressly satisfy the requirements of § 512(e). CCI is engaged in a design, engineering, construction, and building occupation, and the CBAs provide the wages, hours of work, and working conditions, expressly provide for meal periods for covered employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and Plaintiff received a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate. Moore Decl., ¶ 5, Ex. 1, Art. IX (Sections 902 – 904), Article VI

(Sections 601-601.8), Article IX (Section 904), App'x M (providing for comprehensive Grievance of Disputes); *see also id.*, ¶¶ 5-7; Exs. 2-5, ¶ 10. As a result, the claims are preempted under Step 1 of the LMRA analysis, and the Court will have to engage in this analysis to resolve the claims.

31. Moreover, the Court will need to interpret the CBAs to resolve any meal period claim. Each of the CBAs provide for meal periods, and expressly lay out the conditions under which employees are entitled to such breaks. Moore Decl., ¶ 5, Ex. 1, Art. IX (Sections 903-904); *see also id.*, ¶¶ 5-7; Exs. 2-5. To resolve Plaintiff's meal period claims, the Court will have to determine the meaning of the various CBAs' requirements, which vary between the CBAs. This includes the CBAs' meal period timing requirements and the employee's obligation to take meal period.

32. For example, the Southern California Master Labor Agreement (2022-2026) applicable to Plaintiff provides that:

> Employees shall not work more than five (5) consecutive hours without a one-half (1/2) hour meal period. When employees work over five (5) hours without being provided with a one-half (1/2) hour meal period, they shall be paid an additional amount equal to one-half (1/2) hour pay at the double (2) time rate excluding fringe benefits. When an employee is required to work overtime for more than three (3) hours over the regular eight (8) hours, the Employer agrees to provide a meal period each five (5) hours thereafter and the employee shall have sufficient time to eat the meal without loss of pay. In the event an employee is required to work through an overtime meal period, then the employee shall receive pay for an additional one-half (1/2) hour at the double (2) time rate excluding fringe benefits. Meal periods may be staggered to meet job requirements. No employee will be required to work more than five (5) hours during any time period without a meal period.

Moore Decl., ¶ 5; Art. IX (Section 903); *see also id.*, ¶¶ 5-7; Ex. 3, Section 22. Furthermore, any grievances regarding the provisions meal periods specifically and the CBA, generally, must be resolved via grievance procedures in the CBA. Moore

Decl., ¶ 5; Ex 1, Article VI (Sections 601-601.8), Article IX (Section 904), App'x M (providing for comprehensive Grievance of Disputes); *see also, id.*, ¶¶ 5-7; Exs. 2-5.

33. The Court will need to interpret these above provisions to resolve Plaintiff's meal claims. The Court will also be required to interpret the other CBAs at issue, and conduct a similar analysis.

34. **Additional Claims:** Plaintiff's failure to timely pay all wages claims (i.e., failure to timely pay all wages during employment and upon separation of employment), wage statement claims, and unfair competition claims derive from his underlying claims. *See* Complaint, ¶¶ 60-66, 67-74, 75-79 ("78. Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, et seq."). Thus, these claims are also dependent upon an analysis and interpretation of the CBAs, as set forth above. *See Curtis,* 913 F.3d at 1150, n. 3 (finding inaccurate pay stub and final pay claims to be derivative of and dependent on underlying claims of overtime, meal and rest period, and minimum wages); *Estrada v. Kaiser Foundation Hospitals*, 678 Fed. Appx. 494, 497 (9th Cir. 2017) (finding that when a claim derives from a LMRA-preempted claim, the derivative claim also fails); *Jimenez v. Young's Market Co., LLC*, No. 21-cv-02410-EMC, 2021 WL 5999082 at *13 (N.D. Cal. Dec. 20, 2021) (finding that claims for failure to pay final wages and provide accurate wage statements were preempted because they were derivative of substantive claims for owed overtime and meal break violations).[1]

---

[1] Plaintiff's remaining claims are also preempted. They are preempted because the CBAs must be interpreted to resolve Plaintiff's claims, and/or because they are derivative of preempted claims. *See Firestone*, 219 F.3d at 1066-67; *Estrada v. Kaiser Found. Hospitals*, 678 Fed.App'x 494, 497 (9th Cir. 2017); see also, Moore Decl., ¶ 5; Ex. 1, Art. IX (Section 904) ("904. The parties recognize the applicability of Industrial Welfare Commission Wage Order 16 to work performed under this Agreement. Any alleged violation of Wage Order 16 shall constitute a grievance which shall be recognized under the grievance procedure of this Agreement. The grievance procedure detailed in Article VI shall be the exclusive method for resolving all alleged violations of Wage Order 16 and the time limitations of the grievance procedure shall apply to the extent permitted by applicable local, state or federal law. Nothing in the Agreement shall be construed to limit the relief that an arbitrator deems appropriate."); *see also id.*, ¶ 6, Ex. 3, Section 22 (rest periods), Section 51. Defendant reserves its right to present these arguments. However, given the clear preemption of the claims discussed, and the fact that the Court may clearly exercise supplemental jurisdiction of the remaining

35. **Grievance and Arbitration Procedure:** Moreover, each of the CBAs expressly call for final and binding arbitration for any and all disputes concerning the application or interpretation of the CBAs' provisions. Moore Decl., ¶ 5; Ex 1, Article VI (Sections 601-601.8), Article IX (Section 904), App'x M (providing for comprehensive Grievance of Disputes); Ex. 3 (Section 51), *see also, id.*, ¶¶ 5-7; Exs. 2-5. Accordingly, all covered employees of the various CBAs are subject to arbitration as the exclusive remedy per their respective CBAs.

36. The promotion of extra-judicial dispute resolution is another purpose of Section 301 preemption. State court lawsuits properly removed on preemption grounds may then be deferred to arbitration, if the parties to the CBA have so agreed. *See Livadas v. Bradshaw*, 512 U.S. 107, 142 fn. 18 (1994). As a result, Plaintiff's claims and those of the Putative Class Group are therefore subject to exclusive grievance procedures and arbitration as discussed above. Accordingly, any alleged violation of the various CBAs are subject to the grievance procedures set forth therein. As a result, the Court will necessarily have to interpret the grievance and arbitration provisions to analyze the claims in this case. That is, the Court will be required to determine whether the Putative Class Group was first required to exhaust the grievance procedures, whether they did in fact exhaust those procedures, and whether the parties agreed to arbitrate all or some of their claims. The exhaustion of administrative remedies is a procedural prerequisite to maintaining a Section 301 action. *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 767 (7th Cir. 1991). Before filing suit, federal labor policy dictates that an employee is "[o]rdinarily ... required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)); *Smith*, 943 F.2d at 771.

---

claims under 28 U.S.C. § 1367(a), CCI does not further discuss the remaining preempted claims at this time.

37. Accordingly, the claims are substantially dependent upon the interpretation of the terms and provisions of the foregoing CBAs. As a result, removal to federal court is warranted.

### C. The Court May Exercise Supplemental Jurisdiction of Plaintiff's Remaining Claim

38. Pursuant to 29 U.S.C. § 1367(a), supplemental jurisdiction is appropriate when state and federal claims "derive from a common nucleus of operative facts." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *see also, Van Bebber v. Dignity Health*, 1:19-cv-00264-DAD-EPG, 2019 WL 4127204, at *9 (E.D. Cal. Aug. 30, 2019) (exercising supplemental jurisdiction over a plaintiff's remaining causes of action because they arose out of the same employment relationship as their overtime claim).

39. As noted above, all of the claims are subject to LMRA preemption. But even if all somehow were not preempted, that issue need not be resolved now, because it presents no barrier to removal. Any remaining claims are largely derivative of the preempted labor code claims, and all arise from the common nucleus of operative facts that Plaintiff and the Putative Class Group suffered wage and hour violations. The Court should exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) given that the claims all derive out of these alleged facts, and to avoid needless expense of judicial resources and the potential for inconsistent judgments due to parallel proceedings.

40. Specifically, Plaintiff's claims are predicated upon facts and circumstances that are inextricably intertwined with his underlying employment wage and hour claims, and dependent upon an interpretation of the four CBAs. In addition, the wage claims are intertwined with and dependent upon an interpretation of the CBAs. As a result, all the pleaded underlying Labor Code violations emanate from and form part of the same "case or controversy," such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th

Cir. 1990); *Jimenez,* 2021 WL 5999082, at *7 (noting, if only "some claims are completely preempted ... courts may find supplemental jurisdiction in the non-preempted claims if they arise out of a common nucleus of operative fact"). Specifically, courts routinely extend supplemental jurisdiction over wage and hour claims, even if they are not expressly subject to the LMRA preemption, on this basis. *See, e.g., Jimenez,* 2021 WL 5999082 at *7; *Landy v. Pettigrew Crewing, Inc.*, No. 219CV07474RGKAFM, 2019 WL 6245525, at *5 (C.D. Cal. Nov. 22, 2019) (extending supplemental jurisdiction over PAGA claims not covered by the CBA); *Sachs,* 2022 WL 489696, at *6; *Armenta v. Stater Bros. Markets*, No. 5:20-cv-02364-MSC-KK, 2021 WL 1102444, at *3 (C.D. Cal. Mar. 23, 2021). Given the above, considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising supplemental jurisdiction over all the underlying alleged violations in Plaintiff's Complaint.

### III. CCI HAS SATISFIED ALL PREREQUISITES FOR REMOVAL

41. ***Removal Was Timely***. CCI was served with Plaintiff's Complaint on April 18, 2024. Ferrantella Decl., ¶ 3, Ex. B. This Notice is timely filed in accordance with 28 U.S.C. § 1446(b), because it is within thirty (30) days from when CCI was served with the pleadings setting forth the claims for relief upon which this removal is based. Under 28 U.S.C. Section 1446(b) and Federal Rule of Civil Procedure 6(a), the time to remove could not expire, at the earliest, until after Saturday, May 18, 2024, with the first court day which is 30 days after CCI was served with the Summons and Complaint being May 20, 2204. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999); Fed. R. Civ. Pro (6)(a)(1). This removal is timely.

42. ***State Court Within this Court's Jurisdiction***. Venue is proper in the Southern District of California pursuant to 28 U.S.C. §§ 84(d) and 1391 because the county in which the State Court Action was pending (San Diego) is found within this District.

43. **State Court Pleading Attached**. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on CCI or filed by CCI are attached hereto as the following exhibits, including Plaintiff's Summons, Complaint, Civil Case Cover Sheet, and Civil Lawsuit Notice (Exhibit A); Plaintiff's Proof of Service (Exhibit B); and CCI's Answer to Plaintiff's Complaint (Exhibit C). *See* Ferrantella Decl., ¶¶ 2-6; Exhibits A-C.

44. **Filing and Service of Notice of Removal**. This Notice will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of San Diego.

45. If this Court has a question regarding the propriety of this Notice of Removal, CCI requests it issue an Order to Show Cause so it can provide additional briefing on the grounds for this removal, including further detail regarding the full amount in controversy.

## RESERVATION OF RIGHTS

This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to defenses and objections to venue, improper service, and personal jurisdiction. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case, and all defenses, motions, and pleas are expressly reserved.

WHEREFORE, CCI requests that the above action pending before the Superior Court of the State of California for the County of San Diego be removed to the United States District Court for the Southern District of California.

DATED: May 20, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Spencer C. Skeen*
Spencer C. Skeen
Jesse C. Ferrantella
Cameron O. Flynn
Attorneys for Defendant CORE CONTRACTING, INC.